MEMORANDUM *
The petitioner in argument before us waived the issue we now address. In response to our order for supplemental briefing as to whether we are bound by this waiver, the government concedes that we have discretion to address the issue, but urges us not to do so. See Aleman v. Glickman, 217 F.3d 1191, 1196 (9th Cir.2000); In re America West Airlines, Inc., 217 F.3d 1161, 1165 (9th Cir.2000).
In his original hearing before the IJ, the petitioner developed evidence that he had a diminished mental capacity and that this made him more likely to be tortured. The IJ granted CAT relief in part because his diminished mental capacity made it “more likely than not that he would be tortured in the prison systems or in the country of El Salvador if returned there.” The Department of Homeland Security appealed, and the BIA concluded that the IJ had erred by considering the aggregate of three factors: “1) the respondent faced trouble surviving without better language or social skills and without family support; 2) the respondent faced harm from street gangs; and 3) the respondent may be arrested because of his gang-related tattoos or harmed by government-sponsored vigilantes.” The BIA remanded to the IJ, stating that petitioner could qualify for CAT protection only on the basis of the IJ’s third consideration (or the second consideration if the petitioner could make the necessary showings to a governmental connection).
On remand, the IJ held another hearing, at which petitioner presented additional background documents and expert testimony focused on his gang-related tattoos. After considering this additional evidence, the IJ denied petitioner’s application for deferral of removal under CAT, noting that the BIA “stated that the only factor relevant to the CAT analysis is [petitioner’s] possible arrest and torture as a result of his gang-related tattoos.” The IJ specifically “decline[d] to entertain arguments that his diminished mental capacity ... should be considered.” The BIA dismissed petitioner’s appeal without addressing whether his diminished mental capacity made him more likely to be tortured. The government concedes that the petitioner has exhausted this issue.
The question of whether the diminished mental capacity of a petitioner is relevant to a CAT claim is new and important. The BIA’s first decision, speaking only of petitioner’s language difficulties and minimal social skills, did not clearly focus on the question whether the petitioner’s diminished mental capacity made him more likely to be tortured. The likelihood of such abuse is to be measured not only by information about the torturers but by the vulnerability of their victim. It is a sad truth of human experience that a victim’s haplessness enhances the confidence of a bully-
Expert testimony from a psychologist indicated that the petitioner “has been delayed in motor development and also delayed in speaking ability as well. The [petitioner] cannot learn basic skills such as caring for his own hygiene.... [He] will be unable to be self reliant for basic health needs.” Expert testimony also indicated that the petitioner would be arrested because his appearance would identify him as a gang member, and that, due to his devel *604 opmental delays, petitioner would be unable to respond appropriately to police questioning. If these reports are accurate, Ayala’s condition may well be relevant in weighing the likelihood of his being tortured by the police, or by government-linked death squads or gang members whose actions are acquiesced to by the government.
Accordingly, we REMAND to the BIA for reconsideration in accordance with this decision.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.